UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMOTHY W. ELKINS, JR., | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) No.: 20-cv-4093-MMM |
| | ) |
| JOHN DOE WARDEN , *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

### MERIT REVIEW- AMENDED COMPLAINT

Plaintiff, proceeding *pro se*, files an amended complaint under 42 U.S.C. § 1983, alleging inhumane conditions of confinement and deliberate indifference at the East Moline Correctional Center ("EMCC"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted).While the pleading standard does not require "detailed factual allegations", it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Plaintiff claims that he was held in crisis watch from December 22, 2017 through January 2, 2018 in bitterly cold conditions, where he was forced to sleep on a tile floor without a mattress, sheet, or blanket, while the guards wore coats and gloves. Plaintiff appears to allege that the cell had an exterior door as he claims that the guards stuffed rolls of paper towels under the door to keep out the wind and snow. He also complains that the cell was brightly lit at all

1

times, rendering him unable to sleep. Plaintiff alleges that he has unspecified neck injuries from an automobile accident which occurred at a prior, unidentified date. In addition, he experiences blood in his stool from a prior bowel rupture.

Plaintiff had previously pled that he had verbalized suicidal ideation and was placed on crisis watch on December 23, 2017. Plaintiff asserts that, on that date, he told Defendant Officer Wright that he was "freezing, felt sick and that I had a car accident with injuries to my neck. I asked for a blanket and mattress, and to see medical for attention and he said no." Later that same day, Plaintiff made the identical complaint to Defendant Officer Wierema, who also refused his requests.

On December 24, 2017, Plaintiff asked Defendant Officer Huff to give him a second smock due to the cold. He also told Defendant that he was "sick from the cold;" had "serious neck injuries from the MVA; needed a mattress and blankets; needed to see a doctor; and that the bright illumination was causing him sleep deprivation. Defendant Huff took no action in response. That same day, he told Defendant Nurse Jane Doe #1 that he needed a blanket or smock due to the cold, that he felt sick, and had blood in his stool. Defendant Jane Doe #1 told him he would be fine.

Plaintiff claims that his neck hurt him for lack of a pillow and tried to use a Styrofoam tray to relieve the neck pain. On December 25, 2017, he told Defendant LaShelle that he was freezing, couldn't sleep due to the light, needed a blanket and mattress, had severe pain from a motor vehicle accident and had thrown up blood. That same day, Plaintiff asked Nurse Jane Doe #2 for a mattress and told Defendant that he needed treatment for his neck. Defendant Jane Doe #2 responded that that was up to Defendant Dr. Franey, Plaintiff's mental health provider. It is assumed that the reference to Defendant Franey was in regard to the request for a mattress, as

Plaintiff was on suicide precautions. Plaintiff does not plead whether Jane Doe #2 responded to his complaints of neck pain.

It is notable that, while Plaintiff claims that the lack of mattress caused him neck pain, he claims only that he asked to be seen by a physician and given a mattress to alleviate the pain. Plaintiff does not claim that he requested pain medication from any Defendant and that it was refused. He also fails to sufficiently plead why he believed he should be seen by a physician, rather than the three nurses with whom he had contact.

Later on December 25, 2017, a black female, whom Plaintiff believes to be the Warden and whom he identifies as Jane Doe #3, recorded the temperature outside of his cell. Plaintiff told Defendant that he was freezing and needed a mattress due to a serious neck injury from a motor vehicle accident. Plaintiff alleges that Jane Doe #3 took no action.

On December 27, 2017, Plaintiff told John Doe that he needed a mattress due to severe neck pain and needed a blanket due to the cold. He also told Defendant Wierema that he couldn't sleep due to the constant illumination and neck pain and that he was "freezing." Neither Defendant took action in response. That same day, Plaintiff told Nurse Jane Doe #4, that he "needed heat," and "felt sick." Plaintiff was also seen by Defendant Dr. Franey, repeating that he could not sleep due to the constant illumination, neck injury and freezing cold. Plaintiff requested a mattress and asked when he would be released from crisis watch. Defendant allegedly told him he would "live" and to lay down and shut up. Defendant thereafter indicated that Plaintiff would be released after the holiday.

Plaintiff saw Defendant Franey the following day, asking why Defendant was treating him "this way." Defendant allegedly told him that if he did not want such treatment "next time, don't say your [sic] going to kill yourself." On January 2, 2018, Plaintiff spoke to Ashley Flores,

3

position unknown, reiterating these complaints. Ms. Flores responded that Plaintiff was lucky to be getting out, as he was taken off of crisis watch. She indicated that Plaintiff could file a grievance as to his complaints.

Plaintiff alleges the suffered severe mental and emotional injuries. He all also asserts, without pleading facts in support, that he is "still retrieve receiving treatment for my neck because of the enhanced injuries caused by the Defendants." Plaintiff requests declaratory relief as well as nominal, compensatory and punitive damages.

## ANALYSIS

To successfully make out a conditions of confinement claim, a Plaintiff must allege "extreme deprivations." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Adverse conditions of confinement will not rise to a constitutional violation unless "unquestioned and serious" and contrary to "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Plaintiff must establish that the alleged deprivation was objectively, "sufficiently serious" and that Defendants acted with a subjectively culpable state of mind. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (*citing Farmer*, 511 U.S. at 834). *See Jihad v. Wright*, 124 F.3d 204 (7th Cir. 1997), (conditions which are temporary and do not result in physical harm are not actionable under the Eighth Amendment.)

Inmates under suicide precautions may, however, be subject to harsher conditions as these are "inherent in the observation placement for handling suicidal prisoners." *Williams v. Schmidt*, No. 14- 487, 2019 WL 1046167, at *2 (W.D. Wis. Mar. 5, 2019). "Suicidal inmates are removed from regular cells, isolated, and placed in constantly-illuminative illuminated cells for their own protection… Clothing, blankets, eyeglasses, hygiene items, and other property items are prohibited to reduce the inmate's ability to engage in self harm." *See id.*, citing *Cavalieri v. Shepard*, 321 F.3d 616, 621 (7th Cir. 2003). Plaintiff fails to plead a colorable claim against any

Defendant for their failure to provide him a blanket, extra smock, or mattress while he was on crisis watch. !

As to the constant cell illumination, such a condition may be found to violate the Eighth Amendment. *See Williams*, 2019 WL 1046167, at *3 ("[c]onditions that prevent sleep, such as excessive noise or constant illumination, may violate an inmate's Eighth Amendment rights.") An inmate must, however, establish that it caused him harm beyond mere discomfort. *See, e.g., Scarver v. Litscher*, 434 F.3d 972, 977 (7th Cir. 2006); *Vasquez v. Frank*, 2007 WL 3254702 at *5 (W.D. Wis. Nov. 2, 2007). Here, it is unclear as to the extent that the light disrupted Plaintiff's sleep as he claims he was unable to sleep due, in part, to the neck pain.

In addition, as the case progresses, it might well be shown that there was no "feasible alternatives" to the light in the crisis watch cell. This claim will go forward at this juncture, pending a more fully developed record. *See Williams*, 2019 WL 1046167, at *2 quoting *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666 (7th Cir. 2012)."Harsh and isolating conditions may not violate the Eighth Amendment if there were no "feasible alternatives." This claim will proceed against Defendants Wierema, LaShelle, and Huff, the Officers to whom Plaintiff made this complaint. It will also proceed against Defendant Franey who, as the treating mental health professional, might have had the authority to order that the 24-hour illumination cease.

Plaintiff also states a claim for the excessive cold as such a condition is not necessary or "inherent" to the handling of a suicidal prisoner. Such a claim, however, may only be directed against those who had the authority to remediate the complained-of condition. *Williams*, 2019 WL 1046167, at *4 citing *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). This is so, as a Defendant cannot be determined liable "if the remedial step was not within their power." *See Williams* at *4 citing *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012).

Here, it is presumed that the Warden and correctional officers, rather than medical staff, would have had the authority to correct the allegedly excessive cold in the cell. *See Williams*, 2019 WL 1046167, at *4-5, (correctional officers, not mental health professionals had the authority to remediate cell conditions, particularly where the officers were aware of them). The claims regarding the excessive cold in the cell will go forward as to Jane Doe #3, believed to be the Warden; and Officers Wright, Wierema, Huff, LaShelle, and John Doe. It is dismissed as to Dr. Franey and Defendants Jane Doe #1, 2 and 4.

Plaintiff has also alleged that the various Defendants were deliberately indifferent to his serious neck pain and other conditions. Plaintiff's only allegations in this regard against Defendants Wright and Wierema is that on December 23, 2017, he told them that he "felt sick" and had sustained neck injuries in a car accident. He made the same report to Nurse Jane Doe #4 on December 27, 2017, again indicating only that he "felt sick." This is insufficient to plead a serious medical condition to which Defendants were deliberately indifferent. The same applies to Defendant Huff, as Plaintiff pleads only that on December 24, 2017, he told Defendant he was "sick from the cold," had serious neck injuries from a motor vehicle accident and needed to see a doctor. Plaintiff's complaint regarding Nurse Jane Don't #2 also fails where he pleads that he told Defendant that he needed treatment for his neck but did not claim that treatment was not provided.

Plaintiff states a colorable claim, however, against Nurse Jane Doe #1 as he allegedly told Doe #1 not only that he felt sick, but that he had blood in his stool. The same applies to Defendant LaShelle as, on December 25, 2017, Plaintiff reported to Defendant that he had thrown up blood.

6

Plaintiff alleges against Ashley Flores, position unknown, that he complained to her of the cold temperatures in his cell. This complaint was made, however, on the day Plaintiff was released from crisis watch. As a result, there is nothing to support that Defendant Flores had an opportunity to remediate the complaint-of condition. Defendant Flores is DISMISSED.

As previously noted, Plaintiff requests money damages where it is not clear that Defendants' conduct caused him physical injury. *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) (citing §1997(e)e which provides "that "[n]o Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury." Plaintiff is placed on notice that he will need, at a future point, to identify evidence to support the claim that Defendants' conduct "enhanced" his pre-existing neck injury.

**IT IS THEREFORE ORDERED:**

1.    Plaintiff will proceed on claims that Defendants Franey, Wierema, LaShelle, and Huff were deliberately indifferent as to the effects of the 24-hour illumination in the crisis cell. It will proceed on the claims that Defendants Jane Doe #3; and Officers Wright, Wierema, Huff, LaShelle, and John Doe were deliberately indifferent to the cold in the cell; and the claims that Defendants Nurse Jane Doe #1 and Officer LaShelle were deliberately indifferent to a serious medical condition. All other claims will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of Civil Procedure 15. Defendant Nurses Jane Doe #2 and #4, and Ashley Flores are DISMISSED.

2.    Plaintiff is placed on notice that it will be his responsibility through initial disclosures and discovery to identify the Doe Defendants.

3.  Plaintiff files [28], a supplemental motion for recruitment of pro bono counsel with attached exhibits [29]. Plaintiff only supports, however, that he attempted to secure counsel on his own. He does not identify any facts to support that he is unable to adequately represent himself here. The Court does not possess the authority to require an attorney to accept pro bono appointments on civil cases such as this. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). As a result, the Court must make an individualized assessment as to Plaintiff's ability to represent himself based upon the record as a whole, the nature of the claims, and the Plaintiff's ability to pursue his claims through all phases of the case, including discovery and trial. *Navejar v. Iyioloa*, 718 F.3d 692, 696 (7th Cir. 2013). The Court sees no detriment, at this juncture, to Plaintiff representing himself. [28] is DENIED.

4.  Plaintiff files [30] a motion for status. [30] is rendered MOOT by this order. Plaintiff files [31], which purports to be exhibits to his complaint, attesting that he exhausted administrative remedies. Plaintiff need not establish exhaustion at this phase. Furthermore, a late-filed amendment to a complaint is regarded as an improper attempt to piecemeal the complaint. As a result, no action is taken and [31] is rendered MOOT.

5.  The Clerk is directed to send to each Defendant pursuant to this District's internal procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3) a copy of the Complaint; and 4) a copy of this Order.

6.  If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30 days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2). If a Defendant no longer works at the address provided by Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall

provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding address. This information will be used only for purposes of effecting service. Documentation of forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7. Defendants shall file an answer within the prescribed by Local Rule. A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings are to address the issues and claims identified in this Order.

8. Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court, and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

9. Once counsel has appeared for a Defendant, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel. The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

10. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

11. Plaintiff shall immediately notice the Court of any change in mailing address or phone number. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1) ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD PROCEDURES;

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER SCHEDULING DEADLINES; AND

3) ENTER THE STANDARD QUALIFIED PROTECTIVE ORDER PURSUANT TO THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).

ENTERED:    4/30/2021

                                                   s/Michael M. Mihm
                                                   MICHAEL M. MIHM
                                                   UNITED STATES DISTRICT JUDGE